United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br>Richard S. Zachary,<br><br>Debtor. | Bankruptcy No. 14-bk-43040<br>Chapter 7 |
| Ashman & Stein,<br><br>Plaintiff<br>v.<br>Richard S. Zachary,<br><br>Defendant. | Adversary No. 15-ap-00132 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON ASHMAN & STEIN'S SECOND AMENDED ADVERSARY COMPLAINT FOR THE DETERMINATION OF THE DISCHARGEABILITY OF DEBT

This adversary proceeding was brought by Ashman & Stein, a law firm, against Richard S. Zachary, a former attorney once associated with Ashman & Stein. Zachary filed a petition for relief under Chapter 7 of the Bankruptcy Code after a judgment in the amount of $226,666.00 was entered against him and in favor of Ashman & Stein in a prior State court action under Illinois law. Ashman & Stein brought this adversary proceeding against Zachary in the bankruptcy case, claiming that the State court judgment is a nondischargeable debt under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6).

The adversary complaint (as amended) alleged misrepresentations by Zachary involving his intent to share with Ashman & Stein a portion of fees recovered for work in connection with a certain case brought by Zachary to the firm. Misrepresentations were claimed to have been part of a scheme to deprive the firm of its share of fees from that case while benefiting from work and other benefits provided by the firm in reliance with those representations. The parties were alleged to have executed a retention agreement with the client in that case that authorized the fee distribution arrangement, but such agreement had disappeared from the firm's records and was no longer available to the firm. Ashman & Stein alleged that Zachary had taken and removed this document from the firm's files without authorization in order to deprive the firm of its right to future recovery of its share

of those fees. It was pursuant to this alleged retention agreement that Ashman & Stein could assert a right to fees recovered. By depriving the firm of this proof, Zachary was alleged to have further damaged the firm by leaving it with no recourse but to file the State court action that gave rise to the judgment in Ashman & Stein's favor for its claimed share of the fees recovered by Zachary after he left the firm. The complained acts were thus said to have given rise to the judgment sought to be determined nondischargeable in this case.

Zachary's Answer admitted a number of facts pleaded, including that the fees at issue had been paid to him after leaving the firm and not shared with Ashman & Stein, and that final judgment had been entered in the State court action against him in the amount claimed by Ashman & Stein as its share of fees recovered. However, Zachary denied and affirmatively disputed any misrepresentations, fraud, or other intentional misconduct were involved. He denied that any agreement to share those fees had existed between the parties, and denied that the firm had done any substantial work in the case when Zachary was employed as an associate of the firm.

Trial on the Plaintiff's nondischargeability claims was held over the course of four afternoons. After the close of the evidence, both parties having rested and presented their final arguments, ruling on the Plaintiff's nondischargeability claims was taken under advisement. Findings of Fact and Conclusions of Law will now be made and entered. As discussed below, Ashman & Stein has not established that the debt that arose out of the State court judgment is nondischargeable. In seeking to prove misrepresentations and other intentional misconduct, Ashman & Stein seeks to establish the parties had an agreement to share fees, which, at the time such agreement was made, Zachary never intended to uphold, and that Zachary had taken and removed the copy of that agreement from Ashman & Stein's files. However, Ashman & Stein has not met its burden of proving existence of a valid agreement to split fees. First, Plaintiff has not proven that Defendant was responsible for its loss of any purported agreement. Moreover, allegations in this respect are inconsistent with the determination obtained by Ashman & Stein in State court awarding fees on a theory of *quantum meruit*, which is an action assuming lack of any agreement. Having succeeded in the prior State court action on a theory that is only available where no agreement can be shown

2

to control, Ashman & Stein may not now argue that an agreement to share fees governed the adjudged liability. *See New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).

For these and other reasons that follow, judgment will be entered in favor of Zachary.

## FINDINGS OF FACT

Plaintiff, Ashman & Stein is a partnership engaged in the practice of law and maintains an office in Chicago, Illinois. Defendant, Zachary is a former attorney. He was employed by Ashman & Stein as an associate attorney for approximately one year, from February 2004 to late January of 2005. (*See Stipulations of Facts and Documents*, Jan. 26, 2016, ["*Stip.*"] ¶¶ 4-5, 30.)

### The Kyles Case

On November 14, 2003, while working as a sole legal practitioner, Zachary was retained by Taurus Kyles ("Kyles") to represent her in a wrongful death action in the Circuit Court of Cook County, Illinois, Case No. 01-L-2497 (the "Kyles Case"). The attorney-client agreement executed between Zachary and Kyles called for a 40% contingent fee all services rendered thereafter in the Kyles Case. (Def.'s Trial Ex. ["DX"] 2.)

Zachary was retained a few days after summary judgment had been entered in favor of the defendant in the Kyles Case on November 5, 2003. The plaintiff, Taurus Kyles, had been represented by the law firm of Sachs, Earnest & Associates up to that point, and Zachary was engaged to assist with reconsideration or appeal of the summary judgment disposition. (*See* DX. 1, 4, and 5.)

On December 5, 2003, Zachary filed a Motion to Reconsider the November 5, 2003 summary judgment disposition. (DX4.)

On December 8, 2003, Zachary sent a letter to David Earnest from Sachs, Earnest & Associates, reporting that the Motion to Reconsider had been timely filed, and acknowledging payment of a $500 to him by the firm, and a balance of $1,000 for time expended in connection with the Motion filed. (*See* DX5.)

3

On January 15, 2004, the defendant in the Kyles Case filed its Response to the Motion to Reconsider. Notice of filing was sent to Mr. Earnest from Sachs, Earnest & Associates. Zachary was not listed among the notice recipients in the Kyles Case at that stage. (*See* DX6.)

### Zachary's Employment With Ashman & Stein

On February 4, 2004, Zachary became employed as an associate attorney with Ashman & Stein. At this time, the Motion to Reconsider on the Kyles Case was still pending. (*See Stip.* ¶ 5; DX8.)

Zachary testified that he first discussed the Kyles Case was the firm's partners (Gary Ashman and Carey Stein) during his interview a few days before he was hired. According to Zachary, he told the partners that he wanted to continue his work on the Kyles Case. Ashman was said to have stated that if he met the firm's quota of billable hours for cases assigned to him, he would be free to work on the Kyles Case on his spare time. Discussion of fees, according to Zachary, was limited to Mr. Stein's statement that any fees collected in the Kyles Case would be "equitably apportioned." (Zachary's Trial Test., March 25, 2016.)

Ashman & Stein's partner, Mr. Ashman testified that Zachary agreed to the firm's standard employment terms consisting of a base salary and sharing of fees collected in cases brought to the firm. Under these terms, Ashman & Stein was to be entitled to two-thirds (2/3) of any fees collected, and Zachary would have the right to receive the remaining one-third (1/3) of those fees. (Ashman's Trial Test., March 21, 2016; *see* Second Am. Compl. ¶ 8.)

Zachary denied that any agreement was ever reached to split fees from the Kyles Case in the manner alleged by Ashman & Stein. He also denied having "brought" the Kyles Case to Ashman & Stein, claiming that all work in the Kyles Case was done by him personally with minimum input from others at the firm. (Zachary's Trial Test., March 25, 2016; *see* Answer ¶¶ 8-9.)

On February 20, 2004, the Motion to Reconsider Summary Judgment awarded in favor of the defendant in the Kyles Case was denied. Willingness to consider grant of leave

to file a Fourth Amended Complaint was expressed by the court in denying that motion. (*See* Pl.'s Trial Ex. ["PX"] 2, 7; *Stip.* #1, 3.)

On March 2, 2004, a Motion for Leave to File Fourth Amended Complaint in the Kyles Case was filed by Zachary and the firm of Ashman & Stein. (PX 2; *Stip.* #1.) A Reply in support of this Motion would be filed later in March. (PX 9; *Stip.* #5.)

On March 19, 2004, Notice of Appeal of the February 20th Order denying the Motion to Reconsider Summary Judgment was filed by Zachary and Ashman & Stein. (PX 7; *Stip.* #3.) Zachary's contemplated strategy in pursuing appeal while his other Motion for Leave to file Fourth Amended Complaint was pending was shared with Ashman & Stein in a memorandum dated March 18, 2004. (PX 6.)

On March 23, 2004, the law firm of Ashman & Stein was substituted for the firm of Sachs, Earnest & Associates as counsel of record for the plaintiff in the Kyles Case. Substitution was by agreement between Zachary of Ashman & Stein and David Earnest of Sachs, Earnest & Associates. (PX 8; *Stip.* ¶ 17.)

While employed by Ashman & Stein, Zachary reported time spent in prosecuting the Kyles Case to Ashman & Stein (*Stip.* ¶ 19; PX 41, 42); charged expenses incurred in connection with the Kyles Case to Ashman & Stein (*Stip.* ¶ 20; PX 19, 21-23, 27-28); prepared memoranda updating firm partners on the status of the Kyles Case (PX 1, 12, 19, 21-23, 27-28); and sought input from firm partners on briefs filed in the Kyles Case (PX 6, 24, 29).

On April 14, 2004, the Motion for Leave to File Fourth Amended Complaint in the Kyles Case was denied. Notice of appeal of that order was filed shortly thereafter, on April 29, 2004. (PX 14; DX 8; *Stip.* #9.) The firm's strategy in connection with this appeal is memorialized in a memorandum by one of the partners (Mr. Stein) to Zachary dated April 20, 2004. (PX 12.)

Between June and October of 2004, briefing and other work in connection with the two appeals in the Kyles Case was performed by Zachary and Ashman & Stein; the two appeals were eventually consolidated. (*See, e.g.*, PX 25, 26, 29-33; *Stip.* #10-14.) Zachary and the firm's partners continued to exchange communications regarding case status, strategy,

5

and other considerations involved in the pending litigation. Filing fees and expenses incurred in connection with the appeals in the Kyles Case appear to have been paid entirely by Ashman & Stein. (*See, e.g.*, PX 21-24, 27, 28.)

On October 27, 2004, the plaintiffs' Reply Brief was filed in the consolidated appeals in the Kyles Case. (PX 33.)

### Termination of Association and Return of the Kyles Case Files

On or about January 27, 2015, Zachary employment with Ashman & Stein was terminated in what appears to have been a workplace dispute with the firm's partner, Mr. Ashman, a dispute that escalated beyond what each of them was willing to tolerate. Zachary testified experiencing growing animosity at what he perceived as disparaging treatment, and being told by Mr. Ashman at some point that he was "out of here." But Zachary did not claim to have been fired; instead, he left voluntarily; he reported being unhappy with the work environment and did not seek to preserve his employment after that day. No motive for him leaving the firm at this stage is apparent and his employment appears to have ended rather abruptly that same day. (*See* Zachary's Trial Test., March 25, 2016; *Stip.* ¶ 5.)

Zachary returned to private practice as a sole practitioner and continue to represent the plaintiff in the Kyles Case after his association with the firm ended. (*See Stip.* ¶ 17.)

On March 4, 2005, while the Kyles appeal was pending, Ashman & Stein turned over all files and documents relating to the Kyles Case to Zachary. (PX 34). Zachary received a note stating: "The Kyles case is all yours. Good luck and best wishes." That note was signed by Gary Ashman, one of the partners at Ashman & Stein. (DX 10.)

### Continued Litigation of the Kyles Case

On June 27, 2005, the Illinois appellate court reversed the summary judgment for defendant in the Kyles Case. (DX 12.)

On July 28, 2005, Zachary sought leave to be substituted for the firm of Ashman & Stein as counsel of record in the Kyles Case. Order substituting Zachary, as sole practitioner, for Ashman & Stein was entered on August 3, 2005. (DX 11.)

6

On January 31, 2006, a Motion to Reinstate the Kyles Case in circuit court filed by Zachary was granted. Zachary filed his appearance in the reinstanted Kyles Case as a sole practitioner. During the next six months, Zachary litigated additional matters on behalf of the plaintiffs in the Kyles Case, including the filing a Fourth, Fifth and Sixth Amended Complaint, and worked on other pretrial matters set thereafter. (*See* DX 13-25.)

### Settlement of the Kyles Case

On June 1, 2006, the Kyles Case was dismissed with prejudice upon settlement by the parties, with jurisdiction retained to enforce the settlement and adjudicate liens. The trial date previously set for June 6, 2006 was sticken. (DX 25.)

On August 10, 2006, an Order was entered approving settlement of the Kyles Case for $855,000.00, with attorney's fees allocated from those proceeds in the amount of $342,000.00 with the remaining settlement amount of $513,000.00 to go to the plaintiff in that case. (DX 35.)

Of the total $342,000.00 awarded for attorney's fees in the Kyles Case, the plaintiff's prior attorneys, the firm of Sachs, Earnest & Associates, was paid $73,900.00 by Zachary following a release of their attorney's lien filed on June 1, 2006. (*See* DX 36-38.) No other attorney's liens appear to have been filed. (*See* DX 35.)

Zachary did not notify Ashman & Stein of the settlement or the petition to approve settlement distribution in the Kyles Case, and asserts that he never intended to share those proceeds with Ashman & Stein. Aside from amounts to reimburse Ashman & Stein for expenses in the Kyles Case while Zachary was associated with the firm, Zachary refused to pay any portion of the settlement amounts to Ashman & Stein. (*See Stip.* 23, 26-27.)

### The Ashman & Stein Case

On September 19, 2008, Ashman & Stein filed a suit in the Circuit Court of Cook County, Illinois, entitled *Ashman & Stein v. Richard Zachary*, Case No. 2008- L-010502, which sought to recover a share of attorney's fees collected by its former associate, Richard S.

7

Zachary, upon settling the Kyles Case after leaving the firm (the "Ashman & Stein Case"). Count I was a claim for Breach of Contract based on an alleged agreement to share fees recovered from the Kyles Case, claiming two-thirds of those fees were to be paid to Ashman & Stein pursuant to that agreement, and seeking damages of a total of $226,000.00 (representing its claimed share of fees recovered). Count II was a claim for unjust enrichment seeking damages in the amount of $50,000.00. Count III pleaded a claim for quantum meruit recovery for work performed by the firm in the Kyles Case and requesting damages in the amount of $50,000.00. (PX 37; *See Stip.* ¶ 3.)

On May 26, 2009, Ashman & Stein amended its complaint to join the plaintiff in the Kyles Case, Taurus Kyles, as a defendant, and to add a count for quantum meruit recovery against her pleaded as Count IV of their First Amended Complaint. (PX 38)

On February 3, 2010, Zachary filed an Answer to the First Amended Complaint, responding only to Count III, after Counts I (Breach of Contract) and II (Unjust Enrichment) were dismissed. (*See* PX 39.) Zachary's Answer denied general allegations incorporated by reference into Count III which alleged he had agreed to share fees with Ashman & Stein, had brought the case to the firm when he was hired, that a retention agreement was ever executed between the plaintiff in the Kyles Case and Ashman & Stein, and allegations that Zachary took that signed agreement when he left the firm. (*See id.*; *see generally Stip.* ¶¶ 6–16.)

On November 18, 2013, judgment was entered in favor of Ashman & Stein and against Zachary in the amount $266,666.00 plus costs. Judgment was entered by default on the eve of trial, after Zachary failed to appear on the first day set for trial. (*Stip.* ¶ 28; PX 40.)

Zachary did not appeal or seek relief from the November 18, 2013 judgment entered in the Ashman & Stein Case. (*Stip.* ¶ 29.)

### The Bankruptcy Case

On May 16, 2014, Zachary was disbarred in the State of Illinois and in the Northern District of Illinois for, among other matters not involving this case, submitting false documents to a court. (*Stip.* ¶ 30.)

On December 1, 2014, Zachary filed a voluntary petition for chapter 7 bankruptcy. Schedule F to Zachary's bankruptcy petition identifies Ashman & Stein as an unsecured creditor of Zachary in the amount of $226,666.00. Ashman & Stein is an unsecured creditor of Zachary pursuant to the final judgment entered in the Ashman & Stein Case. (*See Stip.* ¶¶ 1-3.)

## CONCLUSIONS OF LAW

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer a proceeding to a bankruptcy judge under 28 U.S.C. § 157, and is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I). It seeks to determine the dischargeability of a debt. Therefore, it "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

### DISCHARGEABILITY OF DEBTS

"In the ordinary course of bankruptcy, the debtor's assets are applied to the payment of his debts and, even though the assets will usually be insufficient to pay those debts in full, he will emerge from bankruptcy with the unpaid balance discharged so that he can start afresh with no overhang of debt." *McClellan v. Cantrell*, 217 F.3d 890, 892 (7th Cir. 2000). Under § 727(a) of the Bankruptcy Code, prepetition debts of an individual Chapter 7 debtor will generally be discharged, *see* § 524(a) (defining discharge). The discharge granted under § 727(a) applies to all pre-bankruptcy debts except to the extent that § 523 applies. *See* § 727(b).

Section 523(a) of the Bankruptcy Code excepts certain categories of debts from the discharge that § 727 normally grants to a debtor. "Courts construe these exceptions narrowly, in favor of the debtor, bearing in mind the goal of bankruptcy law to give the debtor a fresh start." *Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 765

9

(7th Cir. 2011); *See Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1760 (2013) (noting "the long-standing principle that 'exceptions to discharge 'should be confined to those plainly expressed.'"" (citations omitted)). The burden of proof consequently rests with the objecting creditor, who must demonstrate nondischargeability by a preponderance of the evidence. *Fisher Inv. Capital v. Cohen (In re Cohen)*, 507 F.3d 610, 613 (7th Cir. 2007).

In this case, Ashman & Stein claims that the judgment obtained in its prior suit against Zachary is nondischargeable under § 523(a)(2)(A), (a)(4) and (a)(6) (pleaded as Counts I, II and III, respectively). Each of those provisions except from discharge "any debt that arose out of" specified misconduct. *See* 11 U.S.C. § 523(a). Relief sought by Ashman & Stein is predicated on the same acts or misconduct that supported the judgment in State court. Since the dischargeability determination will rest on the same facts that gave rise to the judgment, Ashman & Stein argues that Zachary is collaterally estopped from denying certain issues that were determined in the prior action, including the existence and amount of the debt owed.

### Existence and Amount of Debt Has Been Determined

To prevail on a nondischargeability action under § 523(a), the plaintiff must first establish the existence of a "debt," defined in § 101(12) as a liability of a "claim," which itself is defined in § 101(5) as a "right to payment, whether or not such right is reduced to a judgment . . . ." *See In re Salvino*, 373 B.R. 578, 584 (Bankr. N.D. Ill. 2007), *aff'd sub nom. Wish Acquisition, LLC v. Salvino*, No. 07C4756, 2008 WL 182241 (N.D. Ill. Jan. 18, 2008).

Zachary's liability to Ashman & Stein was determined in the prior action under Illinois law. "A state court judgment is entitled to the same preclusive effect in federal court as that judgment would have in state court." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 772 (7th Cir. 2013); *see* 28 U.S.C. § 1738. "Collateral estoppel bars relitigation of issues determined in prior court actions and applies to discharge exception proceedings under § 523(a)." *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014) (citing *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991)). Because the judgment in this case was rendered by an Illinois state court, Illinois collateral estoppel law governs. *Id.*

Under Illinois law, collateral estoppel requires that "(1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action." *Id.* (quoting *Am. Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000)). In addition, "the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation." *Id.*

Zachary has admitted that a final judgment in the amount of $266,000.00 was entered against him and in favor of Ashman & Stein in the prior State court action, and that relief from that judgment was never sought by him. It is also undisputed that judgment against Zachary was entered by default after Zachary had appeared in the case but failed to appear at trial, and that liability was determined on a theory of *quantum meruit* for work performed in the Kyles Case. An issue is considered to have been actually litigated where it was disputed by the parties and decided by the trier of fact. *Taylor v. Peoples Gas Light & Coke Co.*, 656 N.E.2d 134, 141 (Ill. App. Ct. 1995). Liability was therefore sufficiently litigated in the prior action and collateral estoppel applies to establish the existence and amount of the debt in this case. *See In re Catt*, 368 F.3d 789, 790 (7th Cir. 2004); *Matter of Caton*, 157 F.3d 1026, 1028 (5th Cir. 1998), *as amended on re'g* (Nov. 3, 1998) (discussing Illinois law).

### Count I – § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Ashman & Stein claims that the judgment debt in this case is a debt that arose out of false representations and false pretenses.

To except debts from discharge for false pretenses or false representations under § 523(a)(2)(A), the creditor must show "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied."

11

*Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010). All three elements must be proven. *Glucona America, Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001).

"To be actionable under § 523(a)(2)(A), 'a false representation must concern present or past asserted facts and not be representations or promises to do future actions unless the debtor never intended to perform or had no reasonable basis for his promise of performance or other representation.'" *Chriswell v. Alomari (In re Alomari)*, 486 B.R. 904, 911–912 (Bankr. N.D. Ill. 2013) (citation omitted); *see United States ex rel. Main v. Oakland City University*, 426 F.3d 914, 917 (7th Cir. 2005) ("failure to honor one's promise is (just) breach of contract, but making a promise that one *intends* not to keep is fraud").

"False pretenses in the context of section 523(a)(2)(A) include implied misrepresentations or conduct intended to create or foster a false impression." *Media House Productions, Inc. v. Amari (In re Amari )*, 483 B.R. 836, 846 (Bankr. N.D. Ill. 2012) (*citing Sterna v. Paneras (In re Paneras )*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996)). The implication arises when a debtor, with the intent to mislead a creditor, engages in "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, . . . or understanding of a transaction, in which [the] creditor is wrongfully induced by [the] debtor to transfer property or extend credit to the debtor . . . ." *Paneras*, 195 B.R. at 406 (internal quotations omitted); *see also Amari*, 483 B.R. at 846. A false pretense does not necessarily require overt misrepresentations. *Paneras*, 195 B.R. at 406. "Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.*; *see also Hanson*, 432 B.R. at 771 (finding that a false pretense is "established or fostered willfully, knowingly and by design; it is not the result of inadvertence").

Ashman & Stein claims that Zachary's representations that fees from the Kyles Case would be shared with the firm were false when such representations were made. But no such inference can be drawn from the evidence presented. Zachary appears to have been willing to share fees with the firm while he was associated with the firm—whether those fees were to be "equitably shared" or specifically agreed to be split is largely irrelevant. An

inference that some understanding to share fees while Zachary was associated with the firm can be drawn from the fact that the firm appeared in the Kyles Case as counsel of record and that Zachary billed for his work in the case and charged expenses to the firm. But the fact that he did not share any fees after his association with Ashman & Stein ended does not mean that he never intended to do so.

Ashman & Stein's entitlement to any share of fees once Zachary left the firm could not have depended on the parties' original understanding, even if an actual agreement between the two had existed. Such an agreement would be void because it would violate Rule 1.5 of the Illinois Rules of Professional Conduct. *See Carlson v. Brandt*, 250 B.R. 366, 373-74 (N.D. Ill. 2000), *aff'd sub nom. In re Carlson*, 263 F.3d 748 (7th Cir. 2001). Under Rule 1.5(f):

> [A] lawyer shall not divide a fee for legal services with another lawyer who is not in the same firm, unless the client consents to employment of the other lawyer by signing a writing which discloses: (1) that a division of fees will be made; (2) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division; and (3) the responsibility to be assumed by the other lawyer for performance of the legal services in question.

So even if an agreement to share fees had existed when Zachary was associated with Ashman & Stein, such agreement would no longer be operative once the firm relationship was terminated by the client. *See, e.g., Wegner v. Arnold*, 713 N.E.2d 247, 250 (Ill. App. Ct. 1999); *In re Estate of Callahan*, 578 N.E.2d 985, 988 (Ill. 1991). "Contracts between lawyers that constitute fee-splitting in violation of Rule 1.5(f) are illegal, and illegal contracts are void and unenforceable under Illinois law." *Carlson*, 250 B.R. at 373 (internal citations omitted).

Once Ashman & Stein was discharged by the client, or otherwise ceased all representation of the plaintiff in the Kyles Case, any prior agreement with the client would cease to exist. *See Thompson v. Hiter*, 826 N.E.2d 503, 509 (Ill. App. Ct. 2005) (discussing Illinois law). A discharged attorney is, however, entitled to payment for services rendered up to that point on a *quantum meruit* basis. *Id.* Although Ashman & Stein chose not to introduce evidence of any findings made in the prior State court action to support the judgment amount, the parties agree that judgment was based on Ashman & Stein's *quantum meruit*

claim, not because of any agreement. Moreover, *quantum meruit* recovery is generally available only where there is no written fee agreement. *See, e.g., Hedlund & Hanley, LLC v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 876 N.E.2d 1, 7 (Ill. App. Ct. 2007); *Paloian v. Greenfield, et al. (In re Rest. Dev. Grp.)*, 396 B.R. 717, 724–27 (Bankr. N.D. Ill. 2008).

Any cause of action under § 523(a)(2)(A) requires proof that the debtor acted with intent to deceive. *Pearson v. Howard (In re Howard)*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006). Proof of intent is measured by the debtor's subjective intention at the time the representation was made. *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004). Deciding whether a debtor had the requisite intent under § 523(a)(2)(A) is a factual inquiry determined by examining all of the relevant circumstances, including those that took place after the debt was incurred. *Sears, Roebuck & Co. v. Green (In re Green)*, 296 B.R. 173, 179 (Bankr. C.D. Ill. 2003). Here, the fact that Zachary did not share fees with Ashman & Stein when he collected those fees after he ended his association with the firm does not raise an inference of intent at the time he is alleged to have made the representations, while associated with the firm.

Even if it were assumed *arguendo* that Zachary made representations that he would share fees from the Kyles Case without intending to do so, Ashman & Stein did not and could not prove that it relied on such representations. False pretenses and misrepresentation both require that the creditor actually rely on the debtor's omission or misrepresentation. *Ojeda*, 599 F.3d at 717. This reliance must be "justifiable." *Field v. Mans*, 516 U.S. 59, 73-75 (1995); *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 673 (7th Cir. 1995). Justifiable reliance is a less demanding standard than reasonable reliance and "does not mean that [the objecting creditor's] conduct must conform to the standard of the reasonable man." *Stern v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996) (quoting *Field*, 516 U.S. at 71). Rather, justifiable reliance "requires only that the creditor did not 'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Ojeda*, 599 B.R. at 717 (quoting *Field*, 516 U.S. at 71). The creditor must establish that the debtor made a material

misrepresentation that was the cause-in-fact of the debt that the creditor seeks to have excepted from discharge. *Mayer*, 51 F.3d at 676.

In this case, while Ashman & Stein could have arguably relied on Zachary's alleged promise to share two-thirds of any fees from the Kyles Case while Zachary was associated with the firm, Ashman & Stein's claimed reliance on that original promise after Zachary left the firm is not persuasive. First, since the parties' agreement to share two-thirds of any fees collected is alleged to have taken place when Zachary was associated with Ashman & Stein, that agreement would no longer be enforceable after Zachary left the firm as it would violate applicable rules governing professional conduct of attorneys practicing in Illinois discussed earlier. Therefore, Ashman & Stein's claim that it continued to rely on such agreement is not established.

Second, the evidence showed that Ashman & Stein's partner turned over the Kyles Case files to Zachary with a note stating: "The Kyles case is all yours. Good luck and best wishes." (DX 10.) This contradicted the firm's argument that it was misled by Zachary or that it relied on him to uphold an agreement to split fees from the case, and rendered doubtful the accusation that he stole something from the file.

Therefore, Ashman & Stein failed to establish the elements of § 523(a)(2)(A) by preponderance of the evidence.

### Count II - § 523(a)(4)

Section 523(a)(4) bars the discharge of debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Ashman & Stein sought to prove that the debt at issue arose out of a larceny or embezzlement, claiming that Zachary had taken the retention agreement executed between the firm and the plaintiff in the Kyles Case when Zachary left the firm.[1]

---

[1] Ashman & Stein's allegations with respect to fraud or defalcation while acting in a fiduciary capacity were previously dismissed for failure to state a claim. While Ashman & Stein later amended and re-pleaded such allegations, these allegations fail for reasons stated in the Memorandum Opinion discussing Zachary's motion to dismiss the prior complaint, *see* Dkt. No. 39.

15

Embezzlement means "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Matter of Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (quoting *Moore v. United States*, 160 U.S. 268, 269 (1895).). "To prove embezzlement, the creditor must show … that (1) the debtor appropriated funds for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit." *Id.*

Larceny is proven for purposes of § 523(a)(4) if a debtor wrongfully took property from its rightful owner with fraudulent intent to convert such property to his own use without the owner's consent. *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991). "Intent may properly be inferred from the totality of the circumstances and the conduct of the person accused." *Id.* at 904. "Embezzlement differs from larceny only in that the original taking was lawful, or at least with the consent of the owner, unlike larceny, where there is a requirement that felonious intent exist at the time of the taking." *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 703 (Bankr. N.D. Ill. 2002).

In this case, Ashman & Stein claimed that Zachary committed a larceny when he took from its files an alleged signed retention agreement, which the firm claimed it once had but it later disappeared. However, Ashman & Stein did not prove by preponderance of evidence that such agreement existed, or that Zachary wrongfully took that agreement with intent to convert such agreement for his own purposes without Ashman & Stein's consent. Evidence that such agreement ever existed was inconclusive, and the only conclusive evidence was that Ashman & Stein voluntarily turned the files from the Kyles Case over to Zachary after Zachary's employment with the firm was terminated.

Nor can fraudulent intent be inferred. Zachary would have had no use for the claimed agreement and such agreement would have been void once the firm's representation of the plaintiff in the Kyles Case was terminated, as discussed above in connection with Count I.

Accordingly, Ashman & Stein failed to establish the elements of nondischargeability under § 523(a)(4).

**Count III - § 523(a)(6)**

Section 523(a)(6) of the Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Under §523(a)(6), willful and malicious injury means "(1) an injury caused by the debtor (2) willfully and (3) maliciously." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013).

Injury means "a violation of another's legal right, for which the law provides a remedy." *Id.* Willfulness means "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in the original); *see also Kawaauhau*, 523 U.S. at 64 ("[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."). Maliciously means "in conscious disregard of his duties without cause or excuse; it does not require ill-will or specific intent to do harm." *Id.*

Ashman & Stein claims that Zachary wrongfully took and retained, or concealed or destroyed the retention agreement alleged to have been executed between the firm and the plaintiff in the Kyles Case. It claims Zachary did so to divert the settlement proceeds that would have been due to Ashman & Stein in connection with that agreement. But these allegations were not proven by preponderance of the evidence. As previously noted, the firm did not establish that Zachary took any agreement from its records. Rather, the evidence showed that the firm turned over the files from the Kyles Case to Zachary voluntarily, and nothing on the record permits an inference that Zachary took anything from the file without the firm's consent.

Therefore, Ashman & Stein failed to establish the necessary elements of a cause of action under § 523(a)(6) by preponderance of the evidence.

## CONCLUSION

For the foregoing reasons, Ashman & Stein has failed to show that the debt owed to it by the defendant, Richard S. Zachary is nondischargeable under 11 U.S.C. § 523(a).

Judgment will therefore be separately entered in favor of the defendant that the plaintiff recovers nothing by its action.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 8th day of June, 2016

JUN - 8 2016